STATE v. CLIFTON EARP AND RAY EARP.

(Filed 17 October, 1928.)

**1. Criminal Law—Trial—Motion of Nonsuit.**

A motion as of nonsuit in a criminal case at the close of the State's evidence, renewed after all the evidence has been introduced, does not confine its sufficiency to the time of the first motion, and will be denied if there is sufficient evidence in the State's behalf viewing all the evidence in its entirety. C. S., 4643.

**2. Forcible Trespass—Criminal Responsibility—Nature and Elements of the Crime.**

The offense of forcible trespass under C. S., 4300, does not involve title to the premises, but is directed against the possession, and when the possession is in the prosecuting witness, and the entry is made in such a manner with such show of force, after being prohibited by the prosecuting witness, as tends to a breach of the peace, it is sufficient for conviction.

APPEAL by defendants from *Cranmer, J.,* and a jury, at March Term, 1928, of WAKE. No error.

The defendants were convicted of forcible trespass.

The evidence of James Johnson, prosecuting witness for the State, was to the effect that he rented a farm on halves from J. J. Norris, at Holly Springs, in Wake County, N. C.; he furnished the stock and did the work. Norris owned two places. On the place Johnson lived, which he rented from Norris, there was no barn or stables or crib. There was a strip of land between this place and the other place owned by Norris. On this latter place there was a barn and stables, which were rented to Johnson to keep his stock in in connection with the other place. He was in possession of same on 20 January, 1928; had his mules, fodder and raw food in the stables and corn in the crib. The stables were locked by Johnson. This was the third year Johnson had been in possession of the stables. Clifton Earp had moved on the place on 17 January where the barn was located. He told Johnson prior to the 20th to clear the barn and get the mules out, as he wanted to put his feed and mules in. Johnson told him he had the place rented for the year and he could not do it. "He (Clifton Earp) said he would give me three days to get them out. About fifteen minutes to 12 o'clock on 20 January I met Clifton Earp and he said, 'I told you to get those mules out of there by 12 o'clock' and also said, 'If you do not get them out I am going to catch them and turn them out.' I forbade him from interfering with anything in there or on that lot or barn, because it went with the farm. He said, 'You heard what I said.' I said, 'If you want my mules out you get papers and let the sheriff turn them out.'"

What occurred is described by Johnson as follows: "I went to a tobacco barn not far from the stables, and by that time my wife came down, and I was telling her what I told him, and we were where we could see the stables, and he came out to the barn at 12 o'clock and his brother was with him, and Mr. Norris behind them, and all three of them went down there, and he went in front of the stables, and I said, 'Come on, he is at the stables,' and I hurried out there, and just as I walked up to the first stable door he took a hammer and jerked the staples out, and opened the door, and I said, 'I forbid you from turning out my mules,' and I told him to catch them, and he said to me 'You catch them,' and I said, 'I am not going to do it, and I forbid you bothering it.' And I reached to hold the door, and it was dangerous, and I had it braced. Then I went around to the other door, and when he turns loose this door I started out and I hurried around to the other door, and when I got there he had jerked that out and opened the door, and his brother ran up to catch that mule, and I said to him, 'I forbid you from bothering with my mule,' and Ray said, 'If you say so I will go around there and get one of your mules and rush in there on top of mine,' and about that time Cliff walked away and went around to the other one, and by the time

STATE *v.* EARP.

I got there my wife had backed back, and mule ran out, and Mr. Cliff wheeled around and went to the other door and the other one ran out."

J. J. Norris, a witness for defendants, testified in part: "Last year up until in December I lived this side of Holly Springs. I left there about 16 January and Clifton Earp moved in. There is a barn belonging to the house place in the edge of the yard." Cross-examination: "Jim Johnson farmed with me for the two years, 1926 and 1927. I only had a cow. I had no stock of my own except a cow. *I furnished him stables at my house to keep the mules in and a barn to keep the feed in."*

The assignments of error will be considered in the opinion.

*Attorney-General Brummitt and Assistant Atorney-General Nash for the State.*

*J. C. Little for defendants.*

CLARKSON, J. At the close of the evidence for the State, and at the conclusion of all the evidence, the defendants moved to dismiss the action or for judgment of nonsuit. C. S., 4643. The court below refused the motion, and in this we think there was no error.

An exception to a motion to dismiss in a criminal action taken after the close of the State's evidence, and renewed by defendant after the introduction of his own evidence, does not confine the appeal to the State's evidence alone, and a conviction will be sustained under the second exception if there is any sufficient evidence on the whole record of the defendant's guilt. *S. v. Brinkley,* 183 N. C., 720, 110 S. E., 783; *S. v. White, ante,* 1.

The evidence tended to show that the prosecuting witness, Johnson, was in the actual possession of the stables and barn. Johnson's mules were in the stables. The stables had been locked by him. Clifton Earp and Ray Earp, the defendants, in company with J. J. Norris, went to the stables, and Clifton Earp took a hammer and jerked the staples out "and opened the door" and turned the mules out, and he did the same in regard to the other stable. Ray Earp, the other defendant, was present aiding. The prosecuting witness, Johnson, was present forbidding defendants. The defendants were indicted under C. S., 4300, which is as follows: "No one shall make entry into any lands and tenements, or term for years, but in case where entry is given by law; and in such case, not with strong hand nor with multitude of people, but only in a peaceable and easy manner; and if any man do the contrary, he shall be guilty of a misdemeanor."

"Forcible trespass is essentially an offense against the possession of another and does not depend upon the title." *S. v. Webster,* 121 N. C., 586; *S. v. Bennett,* 20 N. C., 170.

In *S. v. Armfield,* 27 N. C., at pp. 210-11, it is said: "The prosecutor was not compelled to prove that the defendants used actual force, before they could be guilty of the offense charged; for if the acts of the defendants, in the taking of the slave, *tended* to a breach of the peace, they were as much guilty of a forcible trespass as if an actual breach of the peace had taken place. We know the law to be, that where a person enters on land in the possession of another, and then, either by his behavior or speech, gives those who are in possession just cause of fear, that he will do them some bodily harm, if they do not give way to him, his entry is considered forcible, and therefore indictable. *S. v. Pollok,* 4 Iredell, 305. In the case of *S. v. Fisher,* 1 Dev., 504, it was held that the number of actors—three—by whom the prosecutor was overawed, and prevented from resisting, made their acts an indictable trespass."

If three men break open the prosecutor's crib and take and carry his corn therefrom, his son being present and forbidding them, they are guilty of a forcible trespass. *S. v. Drake,* 60 N. C., 238.

The court below charged the jury as follows: "That forcible trespass consists in entering upon land in the actual possession of another, with a strong hand. There must be either actual violence used, or such demonstration of force as is calculated to intimidate or alarm, or involve, or tend to a breach of the peace. The offense of forcible trespass is defined in some of the cases to be the unlawful invasion of the possession of another, he being present, violently or with a strong hand. The high-handed manner of the invasion may be by a multitude of people, or with weapons. The force is sufficient if the party in possession must yield to avoid a breach of the peace." Under the facts, as disclosed by the record, we can see no error in the charge, and the assignment of error made by defendants cannot be sustained.

The gist of the offense of forcible trespass is the high-handed invasion of the actual possession of another, he being present forbidding. Title is not involved. The force necessary should be such as is calculated to intimidate or alarm or involve or tend to a breach of the peace. Numbers of three or more are calculated to overawe resistance. *S. v. Fleming,* 194 N. C., 42. The conduct of defendants was more than a civil trespass, the entry, under the statute, can only be "in a peaceable and easy manner," and "not with a strong hand nor with multitude of people." Three or more are a multitude. *S. v. Simpson,* 12 N. C., 504. The courts are open at all times for the redress of actual or supposed grievances. Men cannot take the law in their own hands.

The court below charged the jury, on the question of possession: "The defendants contend that Johnson was not in possession of the land, and

they admit they took off the lock and turned the mules out, claiming that Johnson was not in possession of the land. · So it is a question for you to say."

Defendants' witness, Norris, the landlord, under whom Clifton Earp claimed the possession, testified: "Jim Johnson farmed with me for two years, 1926 and 1927. I only had a cow. I had no stock of my own except a cow. I furnished him stables at my house to keep the mules in and a barn to keep the feed in."

On this testimony the prosecuting witness had actual possession of the stables. The charge, perhaps, was too favorable to defendants. We find in law

No error.