STATE v. CHARLIE ARCHIE NORRIS, JR.

(Filed 13 April, 1955.)

**1. Criminal Law §§ 52a (8), 81f: Trial § 21½ —**

Where, after refusal of motion to nonsuit at the close of the State's evidence, defendant introduces evidence and moves for nonsuit at the close of all the evidence, he waives his exception to the refusal of his motion at the close of State's evidence, but his later exception challenges the sufficiency of the entire evidence to go to the jury, considering all the evidence in the light most favorable to the State, and the exception must be overruled if the entire evidence is sufficient to go to the jury.

STATE *v.* NORRIS.

**2. Criminal Law §§ 52a (4), 81f—**

In passing upon motion to nonsuit, the Supreme Court does not weigh the evidence or attempt to reconcile contradictions therein, but will consider only the evidence favorable to the State and disregard defendant's evidence in conflict therewith.

**3. Automobiles § 30½—**

It is unlawful to drive a motor vehicle in the nighttime without lights, G.S. 20-129.

**4. Automobiles § 29a—**

It is unlawful to drive at any time on a State highway at a speed greater than is reasonable and prudent under the conditions then existing or in any event at a higher rate of speed than 55 miles per hour, G.S. 20-141 (a) and (b) (4).

**5. Same—**

It is unlawful to drive a motor vehicle upon a public highway carelessly and heedlessly, in willful or wanton disregard of the rights or safety of others, or without due circumspection, or at a speed or in any manner so as to endanger or be likely to endanger any person or property. G.S. 20-140.

**6. Automobiles § 28a—**

Culpable negligence is such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others.

**7. Same—**

The violation of a safety statute regulating the use of highways which proximately causes injury or death to another is culpable negligence if such violation is intentional, willful or wanton; the violation of such statute, even though unintentional, constitutes culpable negligence if such violation is accompanied by recklessness amounting to a thoughtless disregard of consequences of a dangerous nature when tested by the rule of reasonable prevision, or a heedless indifference to the safety and rights of others.

**8. Automobiles § 28e—**

The evidence favorable to the State tended to show that defendant was driving his car at nighttime without lights at a speed between 50 and 60 miles per hour toward an intersection, that shortly before the accident his car was seen "wobbling" on the highway in heavy traffic, that the driver of the car in which deceased was riding along a servient highway stopped before entering the intersection, waited for cross-traffic to pass, and then entered the intersection when it was apparently safe, and that the car had cleared the intersection except for two or three feet of its rear, when it was struck by defendant's car. *Held:* The evidence was sufficient to be submitted to the jury in a prosecution for manslaughter.

**9. Automobiles §§ 8i, 28b—**

The evidence tended to show that the driver along the servient highway stopped before entering the intersection with the dominant highway, permitted two cars with lights to pass, started across the highway when it was apparently safe, and had cleared the highway except for about three

STATE *v.* NORRIS.

feet of the rear of her car when she was struck by a car traveling along the dominant highway at excessive speed and without lights. *Held:* The evidence fails to show any negligence on the part of the driver along the servient highway constituting a proximate cause of the collision.

**10. Criminal Law § 38d: Evidence § 46f—**

A physician may use X-rays as an aid in enabling him to determine the nature and extent of the injuries, and may testify thereto even though the X-ray pictures are not introduced in evidence.

**11. Criminal Law § 31c: Evidence § 51—**

Where objections are entered to the testimony of a physician in respect to X-ray pictures which he saw made of head injuries received in the accident, but no reason for the objections are assigned at the time, appellant may not contend on appeal that the evidence was incompetent because the State failed to qualify the expert as a brain surgeon, certainly when it appears that the defendant brought out the testimony in more detail on cross-examination and also the fact that the witness had performed successfully a large number of brain operations.

**12. Criminal Law § 38d: Evidence § 30a—**

Where a patrolman identifies photographs as representing the true condition of the cars immediately after the accident, such photographs are competent for the purpose of enabling the witnesses to illustrate and explain their testimony.

**13. Same: Criminal Law § 81c (2)—**

Where the court, in admitting in evidence properly identified photographs, instructs the jury that they are offered as corroborative evidence and not as substantive evidence, and adds that they are offered for the purpose of illustrating the testimony of the witnesses. *Held:* The use of the word "corroborative" is technically incorrect, but the explanation following made plain to the jury the proper function of the photographs, and the technical error is not prejudicial.

**14. Criminal Law § 48f—**

A policeman, who had followed defendant's car for some distance shortly before the accident, in response to a question as to what defendant said at the hospital some hour after the accident, stated that he told defendant he was "afraid" something was going to happen and that he had planned to stop him, to which defendant replied that he wished the policeman had stopped him. *Held:* The officer's statement was incompetent and should have been stricken on motion aptly made.

**15. Criminal Law § 81c (3)—**

Where the court erroneously fails to strike an unresponsive statement of witness upon motion aptly made, but in the light of the entire evidence in the case, the error is not of such prejudicial import as to have affected the result, a new trial will not be awarded.

**16. Criminal Law § 78e (1): Appeal and Error § 6c (5)—**

An assignment of error to a long excerpt from the charge which fails to point up any objectionable instruction with the definiteness and certainty

required by Rule of Practice in the Supreme Court No. 19 (3), is defective as a broadside objection.

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Rousseau, J.,* November 1954 Term, CALDWELL.

Criminal prosecution upon an indictment charging the defendant with the crime of manslaughter. The charge grew out of the death of Karen Denise Patterson in an automobile collision at the intersection of North Carolina Highway No. 18 and Virginia Street, near the City of Lenoir.

The evidence shows Highway 18 runs east and west, by-passing Lenoir on the south. It is of tar and gravel construction, 19 feet wide, with shoulders extending an additional four feet on either side. From its intersection with Virginia Street, the view is unobstructed 1,000 feet to the east and 3,500 feet to the west. The highway south from Lenoir is designated as Virginia Street to the intersection where the accident occurred. From the intersection south, it is designated as Miller Hill Road. North Carolina Highway No. 18 is the dominant highway on which there are no stopsigns. Virginia Street and Miller Hill Road is the servient highway on which stopsigns are placed, both north and south of the intersection. It is of hard surface construction, 17 feet wide.

On 17 October, 1954, according to the State's evidence, Mrs. Margaret Ann Patterson approached the intersection from the south on Miller Hill Road at about 6:35 p.m., driving a 1950-model Oldsmobile in the direction of Lenoir. Before entering the intersection she stopped in obedience to the stopsign. Two cars were approaching the intersection, traveling east on No. 18. After they passed, Mrs. Patterson, observing no other traffic on No. 18, attempted to cross and as the front of her car had cleared the intersection and entered Virginia Street, leaving about three feet of the rear within the intersection, her car was hit by a 1946 Ford driven by the defendant. The automobile driven by Mrs. Patterson turned over on its side and stopped 75 feet from the point of impact. The Ford driven by the defendant came to rest upside down 90 feet from the point of collision. In the car with Mrs. Patterson were her cousin, Geraldine Patterson, and her daughter, Karen Denise Patterson, two years and five months of age. All were injured and taken to the hospital. The defendant, too, was taken to the hospital. The Oldsmobile was badly damaged on the right rear and side. The Ford was badly damaged on the right front and top. Karen Denise Patterson died two days after the accident. Among other injuries, she had a depressed

fracture of the skull, about 2 x 3 inches.  X-ray photographs were taken of her injury, not by, but under the observation of Dr. Roach.

Two days after the accident Dr. Roach performed an operation, elevating the fracture which was pressing on the brain.  "Some clotted blood had escaped and also a large clot was removed."  While her pulse and respiration were good, to quote Dr. Roach again, "approximately two hours after the operation she suddenly went out . . . the only thing that could have caused it, to my knowledge, was the sudden release of the clot, either that or she had a hemorrhage . . . that in my opinion was due to the injury which she received in the accident."

Both Mrs. Patterson and Geraldine Patterson testified that Mrs. Patterson stopped at the intersection and after two cars had passed going east on No. 18, and the way seemed clear, Mrs. Patterson proceeded into the intersection and had almost cleared it when her car was hit by a car "driven without lights."  Mrs. Gertrude Epps testified she and her husband were driving toward Lenoir on Miller Hill Road and stopped at the intersection immediately behind Mrs. Patterson's car which had also stopped for the intersection.  After two cars passed, "I looked both ways.  You can see a pretty good ways out that way.  I didn't see anything coming.  There was not anything coming.  I didn't see any lights . . . we were right behind Margaret's car.  We both looked both ways and didn't see any car coming."  William Epps testified he was driving immediately behind Mrs. Patterson.  She stopped at the intersection and he stopped his car immediately behind hers.  After two cars passed going east, she crossed the intersection, entering Virginia Street.  "I would say that about two and three-quarters or three feet was projecting over Highway No. 18 when the collision took place.  The defendant's car did not have any lights."  Mr. Graham, a highway patrolman, testified: "I had a conversation with the defendant after the accident, who stated that at the time of the accident he was driving between 50 and 60 miles per hour."

The defendant offered evidence to the effect that his lights had been repaired the day before the accident, were burning and in good order at the time of the accident.  George Martin, Chief of the Lenoir Police Force, a witness for the defendant, testified he saw the defendant about 6:30, south of the city limits of Lenoir, about one mile from the intersection of No. 18 and Miller Hill Road, and that the defendant's headlights were burning at that time.  His taillights were not burning.  "I was behind him for about three-fourths of a mile.  The traffic was very heavy down that hill.  He made several attempts to pass a car in front of him but traffic was too heavy.  I followed on down to the by-pass, that is out of the city limits.  I later had a conversation with him at the hospital about an hour after the accident."  In answer to a question by

the solicitor about what the defendant said, and over objection, the witness testified: "I told him I was afraid that was going to happen and that I had planned to stop him, and he said 'I wish you had stopped me, whether you had jurisdiction out there or not.'" The solicitor asked the following question: "When you turned right at the Shell station, the defendant was going down the by-pass wobbling?" Objection, overruled. Answer: "Yes." The defendant's motion to strike was overruled, to which he excepted. It is approximately one mile from the Shell station to the place where the collision occurred. Marshall Haas, another witness for the defendant, testified that the lights on defendant's car were still burning after the accident and that he turned them off.

The defendant testified in his own behalf: "I met two cars just before I got to the intersection . . . just as they passed me this Oldsmobile came from the center of the road in front of me. I was driving between 50 and 60 miles, about the speed I usually drive, and this car came right out. I put on my brakes and tried to go around the car and I hit the side of the car. The accident occurred about 20 minutes to seven o'clock. It was dark . . . my lights were burning and I asked the Haas boy to turn them off." On cross-examination, he testified: "I did not cut in and out trying to pass cars going down the hill . . . I did not do it to my knowledge— . . . I did not know that it was an officer behind me I later told him I wished he had stopped me." Question by the solicitor: "And that was after he had told you that he had an idea that was going to happen." Objection, overruled. Answer: "Yes." Question: "The dashlights being out, you didn't know how fast you were driving, do you?" Answer: "I know I was not driving over 60 miles per hour. I don't ever drive over that."

The defendant made timely motions for judgment of nonsuit, which were overruled, and exceptions were duly entered. The jury returned a verdict of guilty. Motions to set aside the verdict and to arrest the judgment were made and overruled, to which the defendant excepted. From the judgment that the defendant be committed to jail for a period of 18 months and assigned to work on the roads, he appealed.

*Attorney-General McMullan and Assistant Attorney-General Love for the State.*

*W. H. Strickland for defendant, appellant.*

HIGGINS, J. The defendant assigns as error the court's refusal to grant motions for judgment of nonsuit, to set aside the verdict, and to arrest the judgment. In addition, he claims errors in the admission of evidence over his objection, and in the court's charge.

At the trial the defendant introduced testimony. By so doing he waived his right to bring forward on appeal his exception to the court's refusal to grant his motion for nonsuit at the close of the State's evidence. His later exception, however, challenges the sufficiency of the entire evidence to go to the jury. *S. v. Norton,* 222 N.C. 418, 23 S.E. 2d 301; *S. v. Pasour,* 183 N.C. 793, 111 S.E. 779; *S. v. Earp,* 196 N.C. 164, 145 S.E. 23.

If the evidence in its entirety, taken in the light most favorable to the State, is sufficient to go to the jury, it is sufficient to survive the defendant's motion and to support the verdict. *S. v. Weinstein,* 224 N.C. 645, 31 S.E. 2d 920; *S. v. Stephenson,* 218 N.C. 258, 10 S.E. 2d 819; *S. v. Beal,* 199 N.C. 278, 154 S.E. 604.

The evidence, in the light most favorable to the State, tends to show the defendant was driving his car west on N. C. Highway No. 18, on the by-pass south of Lenoir. As he approached within one mile of the accident his car was "wobbling." Traffic was heavy. It was dark. He was driving without lights and at a speed between 50 and 60 miles per hour. Being unable to discover his approach because of the darkness and the absence of lights on his car, Mrs. Patterson entered the intersection, cleared it except for about three feet, when the defendant's car smashed into hers. Her car stopped 75 feet and his 90 feet from the point of collision. Karen Denise Patterson died two days later as a result of the injuries received in the accident.

The foregoing is a brief summary of the evidence most favorable to the State. This Court is fully aware the evidence in the case as disclosed by the record is conflicting in material parts. It is neither our duty to reconcile the conflict nor ascertain who told the truth. We do not see the witnesses. We do not hear them testify. We do not weigh the evidence. That duty is given to the jury alone. So, in determining whether the evidence, given the interpretation most favorable to the State, is sufficient to sustain a conviction of manslaughter, we must have recourse to applicable rules of law.

It is unlawful to drive in the nighttime without lights, G.S. 20-129. It is unlawful to drive at any time on a State highway at a speed greater than is reasonable and prudent under the conditions then existing or in any event at a higher rate of speed than 55 miles per hour, G.S. 20-141 (a) and (b) (4). It is unlawful to drive a motor vehicle upon a public highway carelessly and heedlessly, in willful or wanton disregard of the rights or safety of others, or without due circumspection and at a speed or in any manner so as to endanger or be likely to endanger any person or property, G.S. 20-140. The foregoing statutes were enacted for the protection of persons and property and in the interest of public safety, and the preservation of human life. The test as to the sufficiency of

evidence to go to the jury in a case of culpable negligence is clearly set forth in the case of *S. v. Cope*, 204 N.C. 28, 167 S.E. 456. We quote from that forceful opinion by the late *Chief Justice Stacy:*

"5. Culpable negligence is such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others.

"6. An intentional, wilful or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence.

"7. But an unintentional violation of a prohibitory statute or ordinance, unaccompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, is not such negligence as imports criminal responsibility.

"8. However, if the inadvertent violation of a prohibitory statute or ordinance be accompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, amounting altogether to a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others, then such negligence, if injury or death proximately ensue, would be culpable and the actor guilty of an assault or manslaughter, and under some circumstances of murder."

Tested by the foregoing rules, the evidence in this case is sufficient to go to the jury. No defect appears upon the face of the indictment. The motions for nonsuit, to set aside the verdict, and to arrest the judgment were properly overruled, and the assignments of error based thereon cannot be sustained.

The defendant strenuously contends it was the duty of the mother to remain stopped on the servient highway until traffic had cleared on the dominant highway and her failure to do so in this instance was the proximate cause of the child's death, citing G.S. 20-155, 156, and *Marshburn v. Patterson*, 241 N.C. 441, 85 S.E. 2d 683, and *S. v. Satterfield*, 198 N.C. 682, 153 S.E. 155. According to the State's evidence, the mother stopped and waited until the two cars with lights had passed. The defendant's car, without lights, was concealed by the darkness according to the evidence of four witnesses. It came upon her at 50 to 60 miles per hour according to the defendant's own admission.

Assignment of error No. 5 is directed to the testimony of Dr. Roach with respect to X-ray photographs of the child's injury. These photographs were made by Dr. Templeton, but Dr. Roach saw them made. They would have been admissible in evidence for the purpose of enabling Dr. Roach to explain and illustrate his testimony. However,

they were not introduced, apparently. Regardless of who made them, Dr. Roach had a right to use these photographs or any other aids which would enable him to determine the nature and extent of the injuries, and to testify with respect thereto. If the X-ray photographs were properly identified they could be used for the purpose of illustrating his testimony in the same manner as ordinary photographs are used.

Three further objections were interposed to testimony of Dr. Roach with reference to the nature and extent of the injuries sustained by the deceased child and the cause of death. At the time the objections were interposed, no reasons were assigned for them. The defense counsel cross-examined Dr. Roach and he testified in much greater detail than on direct examination with respect to the injuries and the cause of death. In the brief, defendant assigns as a reason why the testimony of Dr. Roach should have been excluded, the failure of the State to qualify him as a brain surgeon. No objection on that ground was made. The defendant brought out the testimony given on direct examination, and in more detail. In addition, the defendant brought out the fact the witness had performed successfully 45 or 50 similar operations. The assignments are without merit.

Highway Patrolman Graham identified a number of photographs of the two cars involved in the accident. He testified they represented the true condition of the cars just after the accident. When the photographs were offered, the court ruled as follows: "Gentlemen of the Jury, these photographs are only offered as corroborative evidence and not as substantive evidence. They are offered for the purpose of illustrating the testimony of the witness." The court plainly told the jury the photographs were not substantive evidence; they were admitted for the purpose of illustrating the testimony of the witness. The further statement that they were offered as corroborative evidence is not technically correct, but the jury could not have misunderstood the limited purpose for which they were admitted.

The question of admissibility of photographs was raised for the first time in this Court in the case of *Hampton v. R. R.*, 120 N.C. 534, 27 S.E. 96. They were excluded. The exclusion rested at least in part upon the ground of changed conditions before the photographs were made. The admissibility of photographs in a trial in the Superior Court was first upheld in the case of *Davis v. R. R.*, 136 N.C. 115, 48 S.E. 591. In that case, *Chief Justice Clark*, speaking for the Court, said: "Photographs frequently convey information to the jury and the court with an accuracy not permissible to spoken words, if their admission is properly guarded by inquiry as to time and manner when made. The admissibility of this species of evidence was, it is true, somewhat questioned (by a divided Court) when presented in this Court for the

first time in *Hampton v. R. R.*, 120 N.C. 534. *But they have since become a well recognized means of evidence* and are not infrequently used on trials below and are sometimes sent up in the record on appeal, especially in actions for personal injury." (Emphasis added.)

Photographic evidence was admitted *"for the purpose of enabling a witness to explain* his testimony." (Emphasis added.) *Pickett v. R. R.*, 153 N.C. 148, 69 S.E. 8. And in *Bank v. McArthur*, 165 N.C. 374, 81 S.E. 327, referring to *Hampton v. R. R.*, *supra*, the Court held: "Even in that case there was a dissent by the present *Chief Justice* who gave forceful expression of his views as to the admissibility of the copy (photograph) in the particular instance *and of the general value of the same as evidence* when properly guarded and identified; views which have in the main since prevailed as the controlling opinion of the Court, *Pickett v. R. R.*, *supra*, and *Davis v. R. R.*, *supra*, and which are in accord with enlightened decisions in other courts of highest resort. *United States v. Otey*, 176 U.S. 422." In *Hoyle v. Hickory*, 167 N.C. 619, 83 S.E. 738, this Court said: "Judging from the photograph exhibited to us at the hearing, we think the jury might well have found that there had been negligence. *The photograph itself was competent as explanatory of the other testimony.* (Emphasis added.)

In *Lupton v. Express Co.*, 169 N.C. 671, 86 S.E. 614, this Court said: "It has been held in several cases in our Reports that the ordinary photograph, when shown to be a true representation and taken under proper safeguards *is admissible in evidence* . . . and the same rule prevails as to photographs taken by the X-ray process."

The following is a quotation from *Bane v. R. R.*, 171 N.C. 328, 88 S.E. 477: "Photographs *are admissible in evidence* when shown to be a true representation and have been taken under proper safeguards. (Emphasis added.)

"Exceptions to the use of the photograph *for the purpose of allowing the witness to illustrate or explain his testimony is not well taken.* (Emphasis added.) *S. v. Jones*, 175 N.C. 709, 95 S.E. 576.

In *S. v. Lutterloh*, 188 N.C. 412, 124 S.E. 752, following some of the earlier decisions, this Court said: "The defendant complains that the action of the trial court in allowing the State to offer in evidence certain photographs of the scene of the accident. *These photographs were designed to show the width and general topography of the road where the accident occurred and were used by the witnesses in explaining their testimony.* There was evidence of the correctness of the photographs and with respect to the time and manner of their taking. The evidence was sufficient to render them competent *for the purposes for which they were offered and used.* (Emphasis added.)

"The Court has held that a photograph correctly representing the premises where the homicide occurred may be used by a witness for the State *for the purpose of explaining his testimony."* (Emphasis added.) *S. v. Matthews,* 191 N.C. 378, 131 S.E. 743, citing *S. v. Mitchem,* 188 N.C. 608, 125 S.E. 190."

In *S. v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824, *Justice Winborne* said: "The decisions of this Court uniformly hold that in the trial of cases, civil or criminal, in this State, photographs may not be admitted as substantive evidence . . . but when there is evidence of the accuracy of a photograph, a witness may use it *for the restricted purpose of explaining or illustrating to the jury his testimony* relevant and material to some matter in controversy." (Emphasis added.) "Ordinarily, photographs are competent to be used by a witness to explain or illustrate anything it is competent for him to describe in words. . . . The accuracy of a photograph must be shown by extrinsic evidence that the photograph is a true representation of the scene, object, or person it purports to portray. . . . The correctness of such representation may be established by any witness who is familiar with the scene, object, or person portrayed."

In *Coach Co. v. Motor Lines,* 229 N.C. 650, 50 S.E. 2d 909, it is said: "The court instructed the jury in effect that the photographs are not substantive evidence and are offered and received only for the purpose of illustrating the testimony of the witness if the jury find that they do illustrate and for no other purpose."

In *Hawes v. Refining Co.,* 236 N.C. 643, 74 S.E. 2d 17, *Justice Winborne* said: "Attention is given to photographs sent us as parts of the case on appeal. They were admitted in the trial court only for the purpose of illustrating the testimony of witnesses. They may not be admitted as substantive evidence but where there is evidence of the accuracy of a photograph, a witness may use it for the restricted purpose of explaining or illustrating to the jury his testimony relevant and material to some matter in controversy."

In *Hunt v. Wooten,* 238 N.C. 42, 76 S.E. 2d 326, *Justice Ervin* said: "The presiding judge gave the jury the customary instruction that the photographs were not admitted as original or substantive evidence but were received solely for the purpose of enabling the witness to explain and the jury to understand the testimony."

The language of many of the old cases (*Pickett v. R. R., supra,* excepted) seems to be broad enough to make photographs, when properly made, admissible as evidence generally. *S. v. Lutterloh, supra,* held that photographs in that case were admissible (1) to show the width and topography of the road where the accident occurred and (2) to enable the witness to explain his testimony. The general rule followed

by the other cases, however, seems to be firmly fixed and established that photographs, properly identified, are now admissible only for the purpose of enabling the witnesses to illustrate and to explain their testimony in order that the court and jury may better understand and evaluate the oral testimony.

The presiding judge in this case told the jury the photographs were offered as corroborative evidence. He then explained that they were offered not as substantive evidence, but for the purpose of illustrating the testimony of the witness. While it may not be technically correct to say the photographs are corroborative evidence, the explanation which followed made plain to the jury their proper function in the case.

The defendant, by his assignment of error No. 10, challenges the correctness of the court's ruling in refusing to strike the answer to a question asked by the solicitor of the witness, George Martin, Chief of Police of the City of Lenoir, who testified for the defendant. Mr. Martin had testified on cross-examination that he was driving behind the defendant on Highway No. 18 a short distance before the defendant turned off on the by-pass around Lenoir, about one mile from the scene of the accident. He further testified the defendant was driving in and out, trying to pass cars in front, but the traffic was too heavy for him to do so. The witness then testified he had a conversation with the defendant at the hospital about an hour after the accident. The solicitor asked the following question, which was objected to: "Question: Tell us what he said." Answer: "I told him I was afraid that was going to happen and that I had planned to stop him and he said, 'I wish you had stopped me whether you had jurisdiction out there or not.'" The defendant made a motion to strike the answer. The motion was denied and the defendant duly excepted.

The answer above referred to was not responsive to the question. Yet, if the police officer had told only what the defendant said, his response would be meaningless without telling what the witness said to the defendant to bring forth the defendant's answer. Yet it must be admitted the officer's statement was not properly admissible, and the motion to strike should have been allowed. In the light of the entire evidence in the case, however, the error does not appear to justify sending the case back for another trial. As was said by this Court in *S. v. Gardner, supra,* "It may be conceded the question is improper and that objection to it should have been sustained, yet when it is considered with the testimony immediately preceding, we fail to find it error of such prejudicial import to warrant a new trial."

Assignment of error No. 13 embraces more than two pages of the court's charge. It does not point up any objectionable instruction with that definiteness and certainty required, Rule 19 (3), Rules of Practice

STATE *v.* EASON.

in the Supreme Court, 221 N.C. 555; *Rawls v. Lupton,* 193 N.C. 428, 137 S.E. 175.

The same objection applies to other assignments of error to the charge, except No. 14. That part of the charge covered by assignment of error No. 14 is taken from the opinion of *Justice Stacy* in *S. v. Cope, supra,* with such rewording as makes the principles there stated applicable to the evidence in this case.

This is a tragic case—a boy 18 years of age must go to prison—another life of that alarming number has been exacted as toll for a few moments of carelessness. The care and vigilance of one driver are not sufficient to give immunity from injury and death which often single out those who are free from blame. In the judgment of the Superior Court of Caldwell County, we find

No error.

BARNHILL, C. J., took no part in the consideration or decision of this case.