STATE OF NORTH CAROLINA v. GEORGE HERMAN LYNN

No. 7225SC744

(Filed 22 November 1972)

**Homicide § 21— sufficiency of evidence to submit case to jury**

Evidence was sufficient in a murder prosecution to require submission of the case to the jury and to support the verdict of guilty of manslaughter where such evidence tended to show that defendant and deceased had been drinking, that they became involved in an argument, that deceased cut defendant with a knife and that defendant then went into another room of his home, obtained his gun and shot deceased.

APPEAL by defendant from *Godwin, Judge,* 20 March 1972 Session of Superior Court held in BURKE County.

The defendant George Herman Lynn was charged in a bill of indictment, proper in form, with the murder of Bobby Lee Smith. The defendant pleaded not guilty and was found guilty of manslaughter. The defendant appeals from a judgment imposing a prison sentence of ten years, which was suspended and the defendant placed on probation.

*Attorney General Robert Morgan and Assistant Attorney General Charles A. Lloyd for the State.*

*Hatcher, Sitton & Powell by Claude S. Sitton for defendant appellant.*

HEDRICK, Judge.

The defendant's only assignments of error challenge the sufficiency of the evidence to take the case to the jury and to support the verdict. When the evidence is considered in the light most favorable to the State, it tends to show the following:

On 27 November 1971 the deceased, Bobby Lee Smith, was taken to Valdese General Hospital for treatment of a stab wound to the chest and two shotgun wounds to the left side of the body. Because of the severity of the injuries to the abdominal region, the deceased was promptly transferred to Baptist Memorial Hospital in Winston-Salem where he died on 25 December 1971 from "septicemia" which was "apparently caused by the entrance of the pellets into the abdominal cavity, that is by the entrance of the gunshot pellets."

The defendant George Lynn was admitted to Valdese General Hospital on 27 November 1971 for treatment of a stab wound to the abdomen.

J. W. Carswell, a Burke County deputy sheriff, arrived at the Lynn home at approximately 8:15 p.m. on 27 November 1971 and found the defendant armed with a loaded double barrel 12 gauge shotgun and Bobby Lee Smith "thrashing around on the floor." Defendant stated to Carswell, "It is my cousin, Bob Smith." "I shot him. There he lays."

After being advised of his constitutional rights at the hospital, and signing a waiver thereof, the defendant on 28 November 1971 made and signed a "voluntary statement" in which he stated, *inter alia:*

"Q. Is this the knife that cut you?

A. No, this is my knife.

Q. Did you have an argument with Bob Smith?

A. We were arguing about something, both of us were drunk.

Q. Did he cut you first?

A. Yes.

Q. Did you cut him?

A. I swung at him with my knife that I had in my pocket. I don't know if I cut him. I was protecting myself. I went outside and he (Smith) followed and was still swinging at me with his knife. I told him I was bleeding too bad and to leave. He (Smith) said he was going to let me bleed down and then cut me to death. He tried to cut me again as I made a run into the house to get

my gun. I knew I was getting weak. I went into the bedroom and got my gun and came back out. He (Smith) was standing near the television when I shot both barrels. I put two more shells in the gun and went to Ode Young's house and told him to call the law and an ambulance. I went back down to the house and sat down in the chair and waited for the law.

Q. Do you remember anything after I (Deputy Carswell) arrived at the scene?

A. I remembered a deputy pulling his gun and telling me to drop my gun on the floor, but nothing after that.

Q. Do you remember what started the argument?

A. I don't remember at all.

Q. How much had each of you had to drink?

A. We both drank the bigger part of the day, beer and rum."

At the conclusion of the State's evidence, defendant testified that he first saw the deceased around 12 or 12:30 p.m. on Saturday, 27 November 1971, at which time they drank "rum and coke." Thereafter, the deceased and the defendant went to the home of defendant's sister in Hudson, arriving at about 3:00 p.m. On the way to Hudson, they "stopped at a package store and got a full case of Budweiser beer." Defendant testified that while at the home of defendant's sister, "Bobby Smith and I sat there and drank some beer and got into an argument. I do not exactly know what the argument was about. He (Smith) threatened to cut me and I told him I wasn't going to stand and let no one whittle on me." Between 5:00 and 6:00 p.m., defendant was driven to his home by his sister and brother-in-law. The deceased arrived at defendant's home "later that evening" in another automobile and "brought the remains of the beer back to the house." "Me and him set there in the living room and drank several more beers apiece and there was some argument there, I don't recall what it was, but it was about the cutting again; that was an hour and a half or so later. During the period of time that we were at the house, Bobby Smith and I continued to drink beer. There were some words exchanged between the two of us."

The remainder of defendant's testimony closely parallels that which was contained in the quoted portions of his "voluntary statement" *supra,* and will not be repeated.

We hold that the evidence was sufficient to require submission of the case to the jury and to support the verdict. *State v. Todd,* 264 N.C. 524, 142 S.E. 2d 154 (1965); *State v. Stinson,* 263 N.C. 283, 139 S.E. 2d 558 (1965); *State v. Norris,* 242 N.C. 47, 86 S.E. 2d 916 (1955).

We have carefully examined the entire record and find that the defendant had a fair trial free from prejudicial error.

No error.

Judges VAUGHN and GRAHAM concur.