STATE OF NORTH CAROLINA v. TRINA SISK BUTLER

No. 503A94

(Filed 6 October 1995)

**1. Criminal Law § 49 (NCI4th)— accessory before the fact— murder, breaking and entering, robbery—aiding principal— evidence sufficient**

The trial court did not err in a prosecution for being an accessory before the fact to felonious breaking and entering, robbery with a dangerous weapon, and first-degree murder by denying defendant's motions to dismiss where defendant conceded that the principal committed the offense and that defendant was not present when the offense was committed, and, contrary to defendant's contention, the evidence, viewed in the light most favorable to the State, tends to show that defendant counseled, encouraged and aided the principal in the commission of the crimes against the victim.

**Am Jur 2d, Criminal Law §§ 168-172.**

**2. Criminal Law § 1133 (NCI4th)— accessory before the fact—murder, breaking and entering, robbery—sentencing—aggravating factors—position of leadership or dominance**

The trial court did not err in sentencing defendant as an accessory before the fact to first-degree murder, felonious breaking or entering, and armed robbery by finding as an aggravating factor that she occupied a position of leadership or dominance over the principal, Pratt, where the evidence tends to show that defendant was twenty-nine years old at the time Pratt murdered the victim; Pratt was still a teenager; when they began to generally discuss robbery, defendant was the only person with the knowledge necessary to bring about and influence the success of the criminal enterprise; and defendant informed Pratt that the victim kept a trunk of money in his house and drove Pratt, who had no other apparent means of transportation, to the victim's house and pointed out the house and told Pratt that no one was home.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**3. Criminal Law § 1114 (NCI4th)— accessory before the fact—murder, breaking and entering, armed robbery—sentencing—aggravating factors—lack of remorse**

The trial court did not err when sentencing defendant for being an accessory before the fact to murder, breaking or entering, and armed robbery by finding lack of remorse as an aggravating factor where defendant contended that the court erred by focusing solely on lack of remorse at the time of the offense. The only evidence of remorse was the testimony of a pastor who visited defendant in jail. However, the fact that defendant showed remorse while in jail carries little weight; it is relatively easy for one facing a life sentence to be remorseful. Defendant not only exhibited a lack of remorse at the time of the offense, but also exhibited no hint of remorse in the five days following the murder prior to her arrest, during which time she was aiding the principal in attempting to cover up the murder and planning the next crime, the break-in and theft of money from her grandmother's home.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**4. Criminal Law § 1271 (NCI4th)— accessory before the fact—murder, breaking and entering, armed robbery—sentencing—mitigating factors—good character**

The trial court did not err when sentencing defendant for being an accessory before the fact to murder, breaking or entering, and armed robbery by not finding the mitigating factor of good character where defendant's only character witness was a relative who did not meet defendant until shortly before her trial, when defendant married the witness's brother and moved into his home while released on bond. The witness's opinion was based solely upon what friends and family members thought of defendant. The character evidence presented by defendant was not the kind of evidence that is so manifestly credible that it required the trial court to find good character as a mitigating factor.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**5. Criminal Law § 1079 (NCI4th)— accessory before the fact—murder, breaking and entering, armed robbery—sentencing—weighing of factors**

The trial court did not abuse its discretion in a prosecution for being an accessory before the fact to murder, breaking or entering, and armed robbery by finding that the aggravating factors outweighed the mitigating factor where the court found the statutory aggravating factor that defendant occupied a position of leadership or dominance, the nonstatutory aggravating factor that defendant failed to show remorse, and the statutory mitigating factor that defendant had a record of criminal convictions consisting solely of misdemeanors punishable by not more than sixty days imprisonment.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Owens, J., at the 11 April 1994 Criminal Session of Superior Court, Rutherford County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to the additional judgment imposed for felonious breaking and entering and robbery with a dangerous weapon was allowed by this Court on 27 December 1994. Heard in the Supreme Court 9 May 1995.

*Michael F. Easley, Attorney General, by Lorinzo L. Joyner, Special Deputy Attorney General, for the State.*

*Steven F. Bryant for defendant-appellant.*

LAKE, Justice.

The defendant was indicted on 18 February 1992 for the offenses of felonious breaking and entering, robbery with a dangerous weapon, and the first-degree murder of James Carroll Lawson. The defendant was tried noncapitally, and the jury found the defendant guilty as charged of felonious breaking and entering, robbery with a dangerous weapon, and first-degree murder on theories of both premeditation and deliberation and felony murder. By judgments and commitment dated 14 April 1994, Judge Owens sentenced the defendant to consecutive terms of life imprisonment for the murder and thirty-five years' imprisonment for the felonious breaking and entering and robbery with a dangerous weapon.

At trial, the State presented evidence tending to show that on 11 February 1992 James Lawson was stabbed to death in his home after surprising Daniel Pratt, an intruder. Pratt testified that he broke into the victim's home for the purpose of stealing a trunk full of money reputedly kept by the victim. The victim returned to find Pratt in his home, and the two men began to struggle. During the struggle, Pratt obtained possession of a knife belonging to the victim and stabbed the victim to death. The defendant stipulated that the victim's death was caused by a stab wound to the chest and that the victim received six additional stab wounds to his back. Pratt was arrested and pled guilty to first-degree murder, felonious breaking and entering, and robbery with a dangerous weapon.

Pratt further testified that the defendant also participated in the criminal enterprise that resulted in the victim's death. Pratt stated that the night before the murder, the defendant told him about an old man who kept a trunk of money in his house. The next day, the defendant told Pratt that the money was kept in an old, run-down house that would be easy to get into without being seen. The defendant described the interior of the house and told Pratt that the man lived there alone, might carry a gun, and was usually away from his home during the day.

Later that day, the defendant drove Pratt to the victim's home. According to Pratt, the defendant slowed down in front of the victim's

house and said, "That's it and he's not at home." At a railroad crossing two hundred yards past the victim's house, Pratt testified that he grabbed his duffel bag, jumped out of the defendant's car, and told the defendant to pick him up in twenty minutes. The defendant asked, "Where?" and Pratt answered, "Here." When the defendant returned to pick up Pratt, she asked Pratt if he "got anything." Pratt told the defendant that he had stabbed the victim but did not know if the victim was dead. The defendant then drove Pratt to a Hardee's to wash the blood from his hands and helped Pratt discard the knife and duffel bag.

Later that evening, the defendant told Pratt that her stepgrandmother, who lived in Georgia, kept large sums of money in a safe in her home. The defendant and Pratt made plans to go to Georgia to rob the defendant's grandmother. In preparation for their trip to Georgia, defendant and Pratt bought a map of Georgia and two pairs of gloves so that no fingerprints would be left in the grandmother's house.

The defendant and Pratt were arrested before they were able to leave North Carolina.

## I.

[1] In her first assignment of error, the defendant contends that the trial court committed reversible error by denying her motions to dismiss. Specifically, the defendant argues that the State failed to present sufficient evidence that she was an accessory before the fact to the felonies committed by Daniel Pratt.

When a defendant moves for dismissal, the trial court must determine whether the State has presented substantial evidence of each essential element of the offense charged. *State v. Quick*, 323 N.C. 675, 682, 375 S.E.2d 156, 160 (1989). If substantial evidence of each essential element is presented, the dismissal is properly denied. *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). In ruling on the motion to dismiss, the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 387-88 (1984).

The defendant was charged with and convicted of first-degree murder, felonious breaking and entering, and robbery with a danger-

ous weapon based on the theory that she was an accessory before the fact to each offense committed by Daniel Pratt. The essential elements of accessory before the fact are (1) the defendant must have counseled, procured, commanded, encouraged, or aided the principal in the commission of the offense; (2) the principal must have committed the offense; and (3) the defendant must not have been present when the offense was committed. *State v. Davis*, 319 N.C. 620, 624, 356 S.E.2d 340, 342 (1987). The defendant concedes the existence of the second and third elements and challenges the sufficiency of the State's evidence only with respect to the first element.

In the present case, the evidence, viewed in the light most favorable to the State, tends to show that the defendant counseled, encouraged and aided Pratt in the commission of the crimes against the victim. The day before the murder, Pratt stole approximately five hundred dollars from his aunt's purse. The defendant received a share of this money and knew that Pratt was looking for other "ways" to obtain money. The defendant knew that Pratt was willing to steal to get more money. That night, the defendant told Pratt about an old man who kept a trunk of money in his house. The next day, the defendant provided Pratt with specific details about the victim and drove Pratt to the victim's house. Less than twelve hours had elapsed between the time the defendant targeted the victim and the time of the victim's murder. Prior to the defendant's counseling, Pratt had no knowledge of the victim's identity, his reputation for keeping large sums of money in his house, the floor plan of the house, or that the victim carried a gun and was rarely home during the day. That the defendant aided Pratt in the commission of the crimes is further evident in that she drove Pratt to the victim's house, pointed out that the victim was not home, and agreed to return and pick Pratt up when it became clear that he was prepared to commit the robbery. Finally, after picking Pratt up outside the victim's house, the defendant asked Pratt, "Did [you] get anything?" It is reasonable to infer, if it is not in fact clear, from this statement and from the evidence overall that the defendant knew that Pratt was going to rob the victim's home.

Based on our review of this evidence, we conclude sufficient evidence clearly existed from which a jury could find that the defendant counseled, encouraged or aided Daniel Pratt in committing the crimes charged. Defendant's first assignment of error is, therefore, overruled.

STATE v. BUTLER

[341 N.C. 686 (1995)]

## II.

**[2]** In her second assignment of error, the defendant contends that the trial court erred by finding as an aggravating factor that she occupied a position of leadership or dominance over Daniel Pratt.

In the present case, the evidence tends to show that the defendant was twenty-nine years old at the time Daniel Pratt murdered the victim. Pratt, on the other hand, was still a teenager. One reasonable inference from this evidence is that the defendant assumed a position of influence over Pratt based on their relative ages. More importantly, however, is the fact that when the defendant and Pratt began to generally discuss robbery as a means of obtaining money, defendant was the only person with the knowledge necessary to bring about and influence the success of the criminal enterprise. The defendant not only informed Pratt that the victim kept a trunk of money in his house, she drove Pratt, who had no other apparent means of transportation, to the victim's house, pointed out the house and told Pratt that no one was home. We find that this evidence fully supports the trial court's finding that the defendant occupied a position of leadership which resulted in Pratt's involvement in the crimes.

## III.

**[3]** We next consider whether the trial court erred in finding in aggravation that the defendant showed a lack of remorse for her crimes. The defendant contends that the trial court erred by focusing solely on the defendant's lack of remorse at the time of the offense, in violation of this Court's holding in *State v. Parker*, 315 N.C. 249, 337 S.E.2d 497 (1985). In *Parker*, this Court held:

> For the [S]tate to prove lack of remorse as an aggravating circumstance, it is not enough to show merely that there was no remorse at the very time the crime was being committed. Rarely does a defendant have remorse for a crime he is presently committing. Almost always remorse occurs, if at all, sometime after the commission when defendant has had an opportunity to reflect on his criminal deed. *If after such time for reflection remorse does not come, and there is evidence of this fact, then lack of remorse properly may be found by the sentencing judge as an aggravating circumstance.*

*Id.* at 257, 337 S.E.2d at 502 (emphasis added). Contrary to the defendant's argument, a careful review of the record supports the trial court's finding.

**STATE v. BUTLER**

[341 N.C. 686 (1995)]

In the case *sub judice*, the only evidence of remorse presented by the defendant was through the testimony of Teresa Greene, a pastor who visited the defendant in jail approximately twice a month. Reverend Greene testified that the defendant demonstrated remorse in that she often became tearful talking about her participation in the crimes and by often stating that she would never have gotten involved with Pratt had she known the resulting consequences. However, the fact that the defendant showed remorse while in jail carries little weight with this Court. It is relatively easy for one facing a life behind bars to be remorseful.

In contrast to her actions while in jail, the defendant not only exhibited a lack of remorse at the time the offense was committed, but she also exhibited no hint of remorse in the five days following the murder prior to her arrest. Instead, the defendant aided Daniel Pratt in attempting to cover up the murder by hiding the murder weapon and other incriminating evidence. Further, the defendant quickly began planning and acquiring the tools necessary to commit her next crime, specifically, the break-in and theft of money from her grandmother's home in Georgia. These actions, which are wholly inconsistent with feelings of remorse, were critical to the trial court's findings. We find that this evidence was enough to support the aggravating factor of lack of remorse found by the trial court. This assignment of error is therefore overruled.

IV.

[4] In her fourth assignment of error, the defendant contends that the trial court erred by failing to find the mitigating factor that she had been a person of good character. Glenn Bradley, the defendant's brother-in-law, testified that the defendant was a good, soft-hearted person and had a good reputation in the community. The defendant specifically argues that by failing to find in mitigation that she was a person of good character, in light of Bradley's testimony, the trial court ignored uncontradicted and substantial evidence of a mitigating factor in violation of the Fair Sentencing Act.

A defendant's sentence may be mitigated by evidence that he or she has been a person of good character. N.C.G.S. § 15A-1340.4(a)(2)m (1988). However, the defendant bears the burden of demonstrating that the evidence so clearly establishes the mitigating factor that no reasonable inferences to the contrary can be drawn and that the evidence is manifestly credible. *State v. Jones*, 309 N.C. 214, 219-20, 306 S.E.2d 451, 455 (1983). Accordingly, we will find the

sentencing judge in error only when evidence of a statutory mitigating factor is both uncontradicted and manifestly credible. *Id.* at 220, 306 S.E.2d at 456.

In this case, the defendant's only character witness, Glenn Bradley, was a relative. Bradley did not meet the defendant until shortly before her trial after she married his brother and moved into his home while released from jail on bond. Bradley's opinion about the defendant's character was based solely upon what friends and family members thought of defendant. During cross-examination by the district attorney, Bradley admitted he had never spoken with any persons, other than the defendant's friends and family, about the defendant's character or reputation. Nor had Bradley ever spoken with anyone who lived in the area of the county where the defendant and her family were from. The character evidence presented by the defendant was not the kind of evidence that is so manifestly credible that it required the trial court to find good character as a mitigating factor. Accordingly, we find no error in the trial court's failure to find defendant's good character as a mitigating factor.

V.

[5] In her final assignment of error, the defendant contends that the trial court erred by finding that the aggravating factors outweighed the mitigating factors. We disagree.

The balance struck by a sentencing court in weighing the aggravating and mitigating factors is a matter left to the sound discretion of the sentencing court and will not be disturbed on appeal absent a showing that the decision was manifestly unsupported by reason. *Parker*, 315 N.C. at 258, 337 S.E.2d at 502-03. The sentencing court need not justify the weight it attaches to any factor. *Id.* at 258, 337 S.E.2d at 502.

In the present case, the sentencing court properly found one statutory aggravating factor, that the defendant occupied a position of leadership or dominance, and one nonstatutory aggravating factor, that the defendant failed to show remorse. The sentencing court found only one statutory mitigating factor, that the defendant had a record of criminal convictions consisting solely of misdemeanors punishable by not more than sixty days' imprisonment. As already noted, the amount of weight to be given these factors is within the sentencing court's discretion. Under the circumstances of this case, we are not willing to conclude that the weighing of the aggravating

and mitigating factors was manifestly unsupported by reason. We are therefore compelled to conclude that the sentencing court did not abuse its discretion by finding that the two aggravating factors outweighed the mitigating factor.

For the foregoing reasons, we conclude that the defendant received a fair trial, free of prejudicial error.

NO ERROR.