DAVIS, Judge.
 

 *446
 
 Rickey Harding Wagner, Jr. ("Defendant") appeals from the judgments entered upon his convictions for two counts of statutory rape, two counts of incest, three counts of sex offense with a child, and three counts of taking indecent liberties with a child. On appeal, Defendant contends that the trial court erred by (1) allowing his wife to offer her opinion regarding Defendant's guilt and to testify about a statement by Defendant that implicated his privilege against self-incrimination; (2) admitting testimony regarding the victim's virginity at the time she was first sexually abused; and (3) failing to find certain mitigating factors during the sentencing phase of Defendant's trial. After careful review, we conclude that Defendant received a fair trial free from plain error.
 

 *578
 

 Factual Background
 

 The State presented evidence at trial tending to establish the following facts: "Mary" is the daughter of Defendant and J.C.
 
 [1]
 
 Defendant did not live with Mary or J.C. but had regular visits with Mary on Thursdays and every other weekend.
 

 In 2012, when Mary was 13 years old, Defendant began taking her on drives in his truck during their visits. Defendant would drive to various residences where he would sell drugs to individuals while Mary remained in the front passenger seat of his truck. During these drives, Defendant forced Mary to take methamphetamine, and he would then touch her breasts and buttocks.
 

 On one occasion, Defendant drove Mary to a barn where he forced her to snort methamphetamine through a rolled-up dollar bill. He then put his hands inside Mary's pants, touching her vagina.
 

 Later that year, Defendant drove Mary to a secluded field in a rural area where he again made her snort methamphetamine. He then proceeded to grope her breasts and buttocks and digitally penetrated her vagina. He proceeded to take off her clothes and engage in vaginal
 
 *447
 
 intercourse with her. Afterwards, he warned Mary not to tell anyone about the incident or else "there would be consequences."
 

 That same year, around Thanksgiving, Defendant took Mary to his home where he lived with his wife, N.E., and their infant daughter. On the way there, Defendant made Mary ingest methamphetamine. When they arrived, N.E. was asleep. Mary took off her clothes and went to the bathroom. As Mary exited the bathroom, she encountered Defendant wearing only a shirt. He began groping her breasts and buttocks and penetrated her vagina with his fingers. He then forced her to perform oral sex on him. When Mary went back to her bedroom, Defendant followed her, physically forced her onto the floor, and proceeded to engage in vaginal intercourse with her.
 

 On another occasion, Defendant once again drove Mary to a secluded rural area, forced her to take methamphetamine, and touched her breasts and buttocks while digitally penetrating her vagina. He then took off her clothes and engaged in vaginal and anal intercourse with her.
 

 On 2 March 2014, after this latest incident of sexual abuse by Defendant, Mary told J.C. that Defendant had raped her and that she did not want to see him again. J.C. called the police and informed them of Mary's accusations against Defendant.
 

 Detective Sarah Benfield ("Detective Benfield") with the Rowan County Sheriff's Office went to the home of Mary and J.C. and interviewed Mary. After hearing Mary's account of Defendant's actions, Detective Benfield subsequently obtained an arrest warrant and placed Defendant under arrest on 28 March 2014.
 

 On 19 May 2014, Defendant was indicted on (1) two counts of statutory rape; (2) two counts of incest; (3) three counts of sex offense with a child; and (4) three counts of taking indecent liberties with a child. Beginning on 9 March 2015, a jury trial was held before the Honorable W. David Lee in Rowan County Superior Court. At trial, the State introduced the testimony of Mary, J.C., Detective Benfield, and N.E. Defendant testified on his own behalf.
 

 The jury found Defendant guilty of all charges. The trial court sentenced Defendant to consecutive sentences of 220-324 months imprisonment for his statutory rape and incest convictions (which were consolidated in file number 14 CRS 51824); 220-324 months imprisonment for his statutory rape and incest convictions (which were consolidated in file number 14 CRS 51828); 166-260 months imprisonment in
 
 *448
 
 connection with his sex offense with a child conviction in file number 14 CRS 51826; 166-260 months imprisonment with regard to his sex offense with a child conviction in file number 14 CRS 51830; 166-260 months imprisonment in connection with his sex offense with a child conviction in file number 14 CRS 51833; and 12-24 months
 
 *579
 
 imprisonment for his taking indecent liberties with a child convictions in file numbers 14 CRS 51826, 51830, and 51833. Defendant was also ordered to register as a sex offender and enroll in satellite-based monitoring for the remainder of his natural life. Defendant gave oral notice of appeal in open court.
 

 Analysis
 

 I. Opinion Testimony
 

 Defendant's first argument on appeal is that the trial court erred by allowing N.E. to offer opinion testimony as to whether Defendant was guilty of sexually abusing Mary. We disagree.
 

 Defendant failed to object at trial to the testimony he now challenges on appeal. Therefore, our review is limited to plain error.
 
 See
 
 N.C.R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
 

 State v. Lawrence,
 

 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal citations, quotation marks, and brackets omitted).
 

 Defendant's argument on this issue is based on the following portions of N.E.'s testimony on direct examination:
 

 Q. Did you ever see anything abnormal take place between [Defendant] and [Mary] when she was at the home?
 

 *449
 
 A. Actually, yes. Now that I've had time to think about some things-
 

 Q. Okay.
 

 A.-since he's been incarcerated. It's just little things that-well,
 
 red flags that I should have picked up on
 
 , but I didn't think much of it at the time.
 

 Q. Okay. What were those little red flags that you didn't pick up on?
 

 A. I'd wake up at like maybe three or four or something like that to go get the baby a bottle, go use the restroom, and him and [Mary] would be wide awake. And it-I would really be upset because I was thinking in my mind, "you know, why aren't y'all in the bed asleep? You could help me with the baby instead of staying up all night."
 

 On another occasion, which I found very odd, I had gotten up to go use the restroom because I was on a lot of antibiotics, so, you know, it affected my stomach. And it's like [Defendant] had come running out of [Mary's] bedroom, and [Mary] actually went into the bathroom.
 

 (Emphasis added).
 

 Defendant asserts that N.E.'s reference to "red flags that I should have picked up on" in connection with Defendant's behavior towards Mary constituted an improper opinion that Defendant was, in fact, guilty of the crimes with which he was charged. It is true that witnesses are not permitted to "offer their opinions of whether [a] defendant [is] guilty."
 
 State v. Carrillo
 
 ,
 
 164 N.C.App. 204
 
 , 210,
 
 595 S.E.2d 219
 
 , 223 (2004),
 
 appeal dismissed and disc. review denied
 
 ,
 
 359 N.C. 283
 
 ,
 
 610 S.E.2d 710
 
 (2005). However, a contextual reading of this portion of her testimony shows that N.E. was not offering an opinion as to Defendant's guilt. Rather, she was merely responding to a question on direct examination as to whether she had ever observed any unusual behavior involving Defendant and Mary while Mary was visiting their home. In so doing, she testified solely as to her own observations of Defendant's behavior during Mary's overnight visits. Her use of the phrase "red flags" was a short-hand label for instances of unusual conduct she personally observed as opposed to a declaration of her opinion as to his guilt.
 

 *580
 
 Therefore, we believe that the trial court's admission of this evidence clearly did not constitute plain error. Defendant's argument on this issue is overruled.
 

 *450
 

 II. Privilege Against Self-Incrimination
 

 Defendant also contends that during her testimony N.E. improperly commented on Defendant's exercise of his constitutional right to remain silent following his arrest. Defendant did not object to this testimony at trial. Therefore, our review is limited to plain error.
 
 Lawrence,
 

 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 .
 

 Defendant's argument is specifically based on the following testimony from N.E. regarding a phone call between her and Defendant after his arrest and while he was incarcerated for the charges upon which he was ultimately convicted.
 

 Q. Okay. Do you still talk to the defendant now?
 

 A. No.
 

 Q. When is the last time that you spoke to him?
 

 A. I want to say it was the week before Halloween.
 

 Q. Did you ever talk to him about these specific allegations?
 

 A. I want to say that I did ask him what had happened, and
 
 he said that he couldn't talk over the phone because it was being recorded
 
 .
 

 (Emphasis added).
 

 This argument is lacking in merit. "[A] proper invocation of the privilege against self-incrimination is protected from prosecutorial comment or substantive use, no matter whether such invocation occurs before or after a defendant's arrest."
 
 State v. Boston
 
 ,
 
 191 N.C.App. 637
 
 , 651,
 
 663 S.E.2d 886
 
 , 896,
 
 appeal dismissed and disc. review denied
 
 ,
 
 362 N.C. 683
 
 ,
 
 670 S.E.2d 566
 
 (2008). However, this is not what happened here. The testimony at issue was from Defendant's wife rather than from a law enforcement officer and was given by her in the course of explaining whether she had ever discussed with Defendant Mary's allegations against him. Her statement that Defendant had declined to discuss those allegations over the phone due to his stated concern that the call was being recorded cannot properly be characterized as a violation of his privilege against self-incrimination.
 

 III. Testimony as to Victim's Virginity
 

 Defendant next challenges the admission of testimony from J.C. and Detective Benfield stating that Mary was a virgin at the time
 
 *451
 
 Defendant began sexually abusing her. J.C. testified as follows on direct examination:
 

 Q. Okay. Was there anything specific that happened on that Sunday that led [Mary] to-to talk to you about what had taken place?
 

 A. No, nothing happened. She just kind of out of the blue said she just wanted to talk to me, and that's when she told me.
 

 Q. Okay. Did she go into any great detail about it? [O]r did she pretty much leave it as you've testified; that he raped her and had done things to her?
 

 A. Yes, she had told me-she had told me what happened;
 
 that she was still a virgin when it happened
 
 .
 

 (Emphasis added). Detective Benfield testified on direct examination as follows:
 

 Q. Okay. And what did [Mary] tell you about what occurred at that time?
 

 A. She said that her dad told her
 
 that he was going to take her virginity
 
 , and that he made her take her pants off and had sex with her in the backseat of the car.
 

 (Emphasis added).
 

 On appeal, Defendant argues that this evidence was inadmissible under Rule 412 of the North Carolina Rules of Evidence, which generally prohibits evidence of a rape or sex offense victim's sexual history. N.C.R. Evid. 412. Defendant asserts that "[t]he improper admission of testimony regarding [Mary's] virginity at the time of [Defendant's] alleged conduct could only serve to inflame the jury against [him], causing the jury to decide the case based on passion and prejudice, rather than on a rational weighing of the evidence in light of the State's burden of proof beyond a reasonable doubt." The State, conversely, contends that this testimony was properly
 
 *581
 
 admitted as corroborative evidence of Mary's account of Defendant's actions.
 

 Defendant did not object to this testimony at trial. Therefore, our review is once again limited to plain error.
 
 Lawrence,
 

 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 .
 

 Even assuming-without deciding-that the testimony regarding Mary's virginity was improperly admitted, Defendant has failed to
 
 *452
 
 demonstrate that this evidence had a probable impact on the jury's verdict. Because Mary was only 13 years old at the time the sexual conduct between her and Defendant began, a reasonable juror would have assumed that she was a virgin at the time even without testimony on that issue. We therefore hold that this testimony did not rise to the level of plain error.
 

 IV. Mitigating Factors
 

 Defendant's final arguments on appeal concern the trial court's refusal to find two mitigating factors during the sentencing phase of his trial. Specifically, he contends that the trial court erred in failing to find as mitigating factors the fact that he (1) successfully completed a substance abuse program prior to trial; and (2) had a positive employment history. We disagree.
 

 It is well settled that
 

 [t]he court shall consider evidence of aggravating or mitigating factors present in the offense that make an aggravated or mitigated sentence appropriate, but the decision to depart from the presumptive range is in the discretion of the court. The State bears the burden of proving beyond a reasonable doubt that an aggravating factor exists, and the offender bears the burden of proving by a preponderance of the evidence that a mitigating factor exists.
 

 N.C. Gen. Stat. § 15A-1340.16(a) (2015).
 

 "The weighing of factors in aggravation and mitigation is within the sound discretion of the sentencing court, and will not be disturbed upon appeal absent a showing of an abuse of discretion."
 
 State v. Clifton
 
 ,
 
 125 N.C.App. 471
 
 , 480,
 
 481 S.E.2d 393
 
 , 399,
 
 disc. review improvidently allowed
 
 ,
 
 347 N.C. 391
 
 ,
 
 493 S.E.2d 56
 
 (1997).
 
 See also
 

 State v. Butler
 
 ,
 
 341 N.C. 686
 
 , 694,
 
 462 S.E.2d 485
 
 , 489-90 (1995) ("The balance struck by a sentencing court in weighing the aggravating and mitigating factors is a matter left to the sound discretion of the sentencing court and will not be disturbed on appeal absent a showing that the decision was manifestly unsupported by reason. The sentencing court need not justify the weight it attaches to any factor." (internal citation omitted)).
 

 A. Completion of Substance Abuse Program
 

 The completion of a drug treatment program after a defendant's arrest and prior to trial is one of the statutory mitigating factors set out in N.C. Gen. Stat. § 15A-1340.16.
 

 *453
 
 (e) Mitigating Factors.-The following are mitigating factors:
 

 ....
 

 (16) The defendant has entered and is currently involved in or has successfully completed a drug treatment program or an alcohol treatment program subsequent to arrest and prior to trial.
 

 N.C. Gen. Stat. § 15A-1340.16(e)(16).
 

 During sentencing, Defendant presented his certificate of completion for a substance abuse program dated 7 January 2014. However, Defendant was not arrested for the offenses at issue in the present case until 28 March 2014. Therefore, his completion of the program occurred
 
 prior to
 
 -rather than
 
 after
 
 -his arrest and thus did not meet the statutory criteria set out in N.C. Gen. Stat. § 15A-1340.16(e)(16).
 

 Defendant nevertheless contends that the trial court erred by failing to treat his completion of the substance abuse program as a non-statutory mitigating factor. Factors not expressly enumerated in N.C. Gen. Stat. § 15A-1340.16(e) may also be deemed by a trial court, in its discretion, as worthy of consideration as a mitigating factor.
 
 See
 

 State v. Cameron
 
 ,
 
 314 N.C. 516
 
 , 518-19,
 
 335 S.E.2d 9
 
 , 10 (1985) ("Regarding non-statutory factors that are proven by a preponderance of the evidence and are reasonably related to the purposes of sentencing ... the trial judge
 
 may
 
 consider them, but such consideration is not required.").
 

 *582
 
 The trial court is authorized to consider any such non-statutory mitigating factors under the "catch-all" provision of N.C. Gen. Stat. § 15A-1340.16(e), which provides for a trial court's consideration of "[a]ny other mitigating factor reasonably related to the purposes of sentences." N.C. Gen. Stat. § 15A-1340.16(e)(21).
 
 See
 

 State v. Spears
 
 ,
 
 314 N.C. 319
 
 , 322-23,
 
 333 S.E.2d 242
 
 , 244 (1985) ("[A]lthough failure to find a
 
 statutory
 
 mitigating factor supported by uncontradicted, substantial and manifestly credible evidence is reversible error, a trial judge's consideration of a non-statutory factor which is (1) requested by the defendant, (2) proven by uncontradicted, substantial and manifestly credible evidence, and (3) mitigating in effect, is a matter entrusted to the sound discretion of the sentencing judge. ... Thus, [the trial court's] failure to find such a non-statutory mitigating factor will not be disturbed on appeal absent a showing of abuse of discretion.").
 

 Here, the trial court carefully considered and weighed the applicable mitigating and aggravating factors, ultimately finding one mitigating
 
 *454
 
 factor-that Defendant "has a support system in the community"-and finding no aggravating factors. As a result, the trial court sentenced Defendant within the mitigated range. Moreover, it is clear from the trial transcript that the trial court inquired about Defendant's completion of the substance abuse program as a potential non-statutory mitigating factor.
 

 Defendant argues, in essence, that the timing of Defendant's substance abuse program in relation to his arrest should be deemed irrelevant and asserts that the trial court's refusal to find this as a mitigating factor entitles him to a new sentencing hearing. Defendant's argument, however, is inconsistent with the balance struck by the General Assembly in N.C. Gen. Stat. § 15A-1340.16(e)(16). By requiring trial courts to consider as a statutory mitigating factor a defendant's involvement in a drug treatment program only in cases where he entered the program following arrest and prior to trial, the legislature has implicitly directed that a defendant's completion of such a program prior to arrest is not
 
 required
 
 to be so considered.
 

 Adoption of Defendant's argument would essentially require us to rewrite N.C. Gen. Stat. § 15A-1340.16(e)(16) to do away with the timing requirement imposed by the General Assembly in this statutory provision. This we cannot do. Our courts lack the authority to rewrite a statute, and instead, "[t]he duty of a court is to construe a statute as it is written."
 
 In re Advance Am., Cash Advance Centers of N.C., Inc.
 
 ,
 
 189 N.C.App. 115
 
 , 122,
 
 657 S.E.2d 405
 
 , 410 (2008) (citation and quotation marks omitted).
 
 See
 

 Carolina Power & Light Co. v. City of Asheville
 
 ,
 
 358 N.C. 512
 
 , 518,
 
 597 S.E.2d 717
 
 , 722 (2004) ("Where the statutory language is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language." (citation and quotation marks omitted)). The trial court therefore did not abuse its discretion by declining to find as a mitigating factor Defendant's completion of a substance abuse program prior to his arrest.
 

 B. Positive Employment History
 

 Finally, Defendant contends that the trial court should have found as a statutory mitigating factor his positive employment history. N.C. Gen. Stat. § 15A-1340.16(e)(19) sets forth the following mitigating factor: "The defendant has a positive employment history or is gainfully employed." N.C. Gen. Stat. § 15A-1340.16(e)(19). Defendant asserts that he demonstrated at the sentencing phase through his own testimony and the testimony of his mother as well as by his introduction of a newspaper article into evidence that he had achieved success as a professional bull rider.
 

 *455
 
 Initially, we note that at the sentencing hearing Defendant's trial counsel did not specifically request that Defendant's employment history be considered as a mitigating factor under N.C. Gen. Stat. § 15A-1340.16(e)(19). Instead, evidence of his bull riding career was introduced for the purpose of showing that he possessed a "support system in the community"-a separate statutory mitigating factor that is set out in N.C. Gen. Stat. § 15A-1340.16(e)(18). Defendant's counsel argued that the evidence of his prior employment history showed that he had been a more "normal" member of society prior to
 
 *583
 
 his drug use and that he could revert back to that status with the help of the family and community support system he now had in place.
 

 We have emphasized that where "a defendant fails to request that a trial court find a factor in mitigation, the trial court has a duty to find the factor only when the evidence offered at the sentencing hearing supports the existence of a [statutory] mitigating factor ... [and] defendant [proves] by a preponderance of the evidence that the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn, and that the credibility of the evidence is manifest as a matter of law."
 
 State v. Davis
 
 ,
 
 206 N.C.App. 545
 
 , 549,
 
 696 S.E.2d 917
 
 , 920 (2010) (internal citations and quotation marks omitted).
 

 Taken together, Defendant's evidence merely showed that he had (1) participated in and won several bull riding competitions; (2) won several thousand dollars in prize money, as well as a saddle for his horse and a truck; and (3) competed in the 2007 national bull riding championship with a broken leg. Even assuming, without deciding, that a career in professional bull riding constitutes the type of positive employment history envisioned by N.C. Gen. Stat. § 15A-1340.16(e)(19), Defendant's evidence indicated that he retired from professional bull riding in 2007, and he did not present evidence that he was gainfully employed between 2007 and the date of his arrest in 2014. Indeed, to the contrary, the only evidence at trial of Defendant earning money during this time period concerned his sale of methamphetamine. Therefore, the trial court did not err in declining to find Defendant's employment history as a mitigating factor.
 

 Conclusion
 

 For the reasons stated above, we conclude that Defendant received a fair trial free from plain error.
 

 NO PLAIN ERROR.
 

 Chief Judge McGEE and Judge STEPHENS concur.
 

 [1]
 

 Pseudonyms and initials are used throughout this opinion for the protection of the minor child and for ease of reading.